Robert D. Phillips, Jr. (SBN 82639)
E-mail: bo.phillips@alston.com
Thomas A. Evans (SBN 202841)
E-mail: tom.evans@alston.com
Alston & Bird LLP
560 Mission St., Suite 2100
San Francisco, CA 94105
Telephone: +1 415 243 1000
Facsimile: +1 415 243 1001

Samuel J. Park (SBN 245327)
E-mail: samuel.park@alston.com
Alston & Bird LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: 213-576-1000
Facsimile: 213-576-1100

William H. Higgins (SBN 208514)
E-mail: william.higgins@alston.com
Alston & Bird LLP
1120 S. Tryon Street, Suite 300
Charlotte, NC 28203-1328
Telephone: 704-444-1000
Facsimile: 704-444-1111
*Attorneys for Defendant*
*Midland National Life Insurance Company*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Veronica L. Taylor, Deann Fallas, Katharine Bartlett, Vahe Amirian, Phillip I. Cohen, and Maria De Altonaga, individually and as representatives of the Class, <br><br> Plaintiffs, <br><br> vs. <br><br> Midland National Life Insurance Company, <br><br> Defendant. | Case No.: 23-cv-04125-PCP <br><br> **MIDLAND NATIONAL LIFE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS; MOTION TO STRIKE CLASS DEFINITION; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Judge:   The Honorable P. Casey Pitts <br> Hearing:  November 30, 2023 <br> Time:    10:00 a.m. <br> Place:    Courtroom 8, Fourth Floor |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 30, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard by the Court, located in Courtroom 8 – 4th Floor, San Jose Courthouse, 280 South First Street, San Jose, CA 95113, Defendant Midland National Life Insurance Company ("Midland") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss any and all claims in this action for failure to state a claim upon which relief can be granted.

Midland moves to dismiss this entire action on the grounds that:

(i)  Plaintiffs' Complaint fails to allege sufficient facts to demonstrate that Plaintiffs have standing to assert a claim under California's Unfair Competition Law (UCL) and

(ii)  Plaintiffs fail to plead that they have no adequate remedy at law, which is a prerequisite for equitable relief under the UCL.

Alternatively, Midland moves for a partial dismissal of Plaintiffs' claims to the extent they claim that:

(i)  The caps, participation rates, and "spread fees" in Midland's fixed indexed annuities are "fees" for the purpose of Section 25107 of the Education Code; and

(ii)  Section 25101 *et seq.* of the Education Code imposes a continuing duty to update current caps, participation rates, and "spread fees" for Midland's fixed indexed annuities.

Midland also moves under Federal Rule of Civil Procedure 12(f) to strike the proposed class definition, at Paragraph 128 of the Complaint, on the ground that it alleges an impermissible "fail-safe" class.

These motions are supported by this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, all pleadings and papers on file in this action, and such other matters that the Court may rely on or which may be presented to the Court at the time of the hearing.

Dated: September 29, 2023

*/s/ Thomas A. Evans*
Thomas A. Evans
Alston & Bird LLP
*Attorneys for Defendant*
*Midland National Life Insurance Company*

## **TABLE OF CONTENTS**

I.    STATEMENT OF ISSUES TO BE DECIDED .................................................. 1

II.   INTRODUCTION ........................................................................................... 2

III.  FACTUAL BACKGROUND ........................................................................... 5

      A.    Fixed Indexed Annuities Use Interest Credit Factors to Calculate the Amount of Interest Added to Annuity Account Values......................................... 6

      B.    Investments in Mutual Funds Are Subject to Market Losses as Well as Fees and Expenses that Are Deducted from Their Accounts and Reduce the Value of the Investment. ...................................................................... 9

IV.  ARGUMENT ................................................................................................ 10

      A.    Legal Standards.................................................................................... 10

      B.    The Interest Credit Factors Used to Calculate Interest Credits Are Not "Fees." ................................................................................................ 11

            1.    The Plain Language of the Statute Does Not Support Plaintiffs' Novel Definition of "Fee." .................................................. 11

            2.    Similar Regulatory Fee Disclosure Requirements Do Not Adopt Plaintiffs' Broad Concept of Fees............................................ 13

      C.    The Education Code Does Not Require Updating the Interest Credit Factors Set by Midland. ...................................................................... 15

      D.    Plaintiffs Have Not Adequately Pleaded Standing to Assert Claims Under the UCL. .............................................................................................. 16

      E.    Plaintiffs Have Failed to Plead They Lack an Adequate Remedy at Law............ 18

      F.    The Court Should Strike Plaintiffs' Improper Fail-Safe Class Definition............ 19

V.   CONCLUSION............................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................10

*Brazil v. Dell Inc.*,
    585 F. Supp. 2d 1158 (N.D. Cal. 2008) .....................................................................20

*Debono v. Cerebral, Inc.*,
    2023 WL 300141 (N.D. Cal. Jan. 18, 2023) ..............................................................18

*Dixon v. Monterey Fin. Servs.*,
    2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) ..........................................................19

*Fuentes v. Dish Network*,
    2019 WL 13081492 (N.D. Cal. Aug. 4, 2019) ..........................................................17

*Goodrich v. Cross River Bank*,
    2022 WL 2954933 (N.D. Cal. Jul. 26, 2022)............................................................11

*Greenfield v. Cross River Bank*,
    2023 WL 187495 (N.D. Cal. Jan. 13, 2023) .............................................................20

*In re Macbook Keyboard Litig.*,
    2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)..........................................................18

*Johnson v. City of Grants Pass*,
    72 F.4th 868 (9th Cir. 2023) .....................................................................................19

*Kamar v. Radio Shack Corp.*,
    375 F. App'x 734 (9th Cir. 2010) .............................................................................19

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ....................................................................................10

*Northstar Fin. Advisors v. Schwab Invs.*,
    615 F.3d 1106 (9th Cir. 2010) ....................................................................................6

*Salaiz v. eHealthInsurance Servs.*,
    2023 WL 2622138 (N.D. Cal. Mar. 22, 2023)..........................................................20

*Sharma v. Volkswagen AG*,
    524 F. Supp. 3d 891 (N.D. Cal. 2021) ......................................................................18

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ....................................................................................18

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ....................................................................................10

*Stafford v. Rite Aid Corp.*,
   2023 WL 2876109 (N.D. Cal. April 10, 2023)..........................................................18

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ..........................................................11

**STATE CASES**

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ..........................................................17

*Harris v. Capital Growth Investors XIV*,
   52 Cal. 3d 1142 (1991) ..........................................................12

*Heckart v. A-1 Self Storage, Inc.*,
   4 Cal. 5th 749 (2018) ..........................................................11

*In re Firearms Cases*,
   126 Cal. App. 4th 959 (2005) ..........................................................18

*Kraus v. Trinity Management Servs., Inc.*,
   23 Cal. 4th 115 (2000) ..........................................................12

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ..........................................................16

*Mayron v. Google, LLC*,
   54 Cal. App. 5th 566 (2020) ..........................................................17

*People v. Clark*,
   45 Cal. App. 4th 1147 (Cal. App. 1996) ..........................................................11

*Rhodes Jamieson, Ltd. v. Cal. St. Bd. Of Equalization*,
   201 Cal. App. 2d 343 (1962) ..........................................................13

*Trope v. Katz*,
   11 Cal. 4th 274 (1995) ..........................................................11

*Veera v. Banana Republic, LLC*,
   6 Cal. App. 5th 907 (2016) ..........................................................17

*Wasatch Property Management v. Degrate*
   35 Cal. 4th 1111 (2005) ..........................................................11

**FEDERAL STATUTES**

15 U.S.C. § 77c (a)(8)..........................................................6, 16

26 U.S.C.§ 403(b) ..........................................................5

iii

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17204 ........................................................................................16, 20

Cal. Education Code 25100 *et seq.* ..................................................................................1, 5, 11

Cal. Education Code § 25101 ...........................................................5, 10, 12, 13, 15, 16

Cal. Education Code § 25102 ........................................................................................................15

Cal. Education Code § 25107 ..............................................................................1, 4, 5, 13, 19

Cal. Ins. Code § 101 ..........................................................................................................................6

**RULES**

Fed. R. Civ. P. 12 (b)(6)..................................................................................................................10

Fed. R. Civ. P. 12(f)..........................................................................................................................11

**REGULATIONS**

29 C.F.R. § 2550.404a-5 ................................................................................................................14

5 Cal. Code. Regs. §§ 20500-27801 .......................................................................................15

**OTHER AUTHORITIES**

Black's Law Dictionary (11th Ed. 2019).................................................................................12

Securities and Exchange Commission, *Mutual Funds and ETFs: A Guide for Investors*
    (2014)..............................................................................................................................................9, 10

MOTION TO DISMISS
*Taylor, et al. v. Midland National Life Insurance Company*, No. 23-cv-04125-PCP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF ISSUES TO BE DECIDED

**1.  Whether interest credit factors are "fees":**  Midland's annuity contracts include interest credit factors, which Plaintiffs identify as "caps, participation rates and spread fees," that are contractual terms used to calculate the interest credited to the annuities' various index accounts, but which never decrease those account values.  Plaintiffs contend that these factors are "fees," which Midland cannot collect under Section 25107 of the Education Code, because they were insufficiently disclosed on the website "403bcompare.com" maintained by the California State Teachers Retirement System.  Midland contends that these interest credit factors are not "fees" as that term is used in the Education Code.  Midland therefore seeks dismissal of Plaintiffs' claims to the extent they seek relief premised on a claim that interest credit factors are unlawful "fees."

**2.  Whether Education Code 25100 *et seq.* imposes an ongoing duty to update interest credit factors:**  Midland seeks dismissal of Plaintiffs' claims to the extent they depend on an alleged duty to update product information, including interest credit factors, on the 403bcompare.com website, because the Education Code does not impose such a requirement.

**3.  Whether Plaintiffs meet the standing requirements to assert claims under the Unfair Competition Law (UCL):**  Midland seeks dismissal of Plaintiffs' claims because they have failed to plead the requirements for standing under the UCL.  Plaintiffs have not alleged facts sufficient to establish a causal connection between the alleged failure to post information on the 403bcompare.com website and any purported injury.

**4.  Whether Plaintiffs have failed to plead that they lack an adequate remedy at law:**  Midland seeks dismissal of Plaintiffs' claims for restitution and injunctive relief under the UCL because they have failed to allege that they lack an adequate remedy at law, which is a prerequisite for obtaining equitable relief in federal court.

**5. Whether Plaintiffs' proposed class definition should be stricken as a fail-safe class:** Midland moves to strike Plaintiffs' proposed class definition, at Paragraph 128 of the Complaint, because it describes a "fail-safe" class, which identifies class members depending on whether they can establish a key element of their claims—whether they paid "fees" that were not "properly disclosed" on the website.

## II.   <u>INTRODUCTION</u>

Plaintiffs are purchasers of fixed indexed annuities, which are long-term insurance products that permit owners to accumulate savings through interest credits. Fixed indexed annuities are neither mutual funds nor securities; they are regulated by the California Department of Insurance. Unlike owners of shares in mutual funds, owners of fixed indexed annuities may allocate the values of their annuities among a "fixed account" or one or more "index accounts." This case relates to the index accounts and the contractual provisions governing how interest credits are calculated for those accounts. Index accounts in these annuities link the amount of interest to be credited to the performance of a designated index, such as the S&P 500 or the Dow Jones Industrial Average, but the insurer guarantees that the interest, however calculated, cannot be less than zero. Therefore, annuity owners, unlike mutual fund investors who invest directly in funds tracking the corresponding indexes, are not exposed to market losses if the value of the linked index declines. Accordingly, Plaintiffs' claims regarding these index accounts do not involve any loss of either principal or prior gains.

Plaintiffs claim that Midland collected unlawful "fees" by applying interest credit factors, including caps, participation rates, and index margins,[1] to calculate interest credits using a formula spelled out in the contracts. Plaintiffs mischaracterize the caps, participation rates, and margins as "indirect fees" because the contractual formulas that determine interest credits may result in credits that are lower than the return on a (much riskier) direct investment in the securities that make up each index (*e.g.*, stocks in the S&P 500). Plaintiffs claim that Midland has collected "unlawful" fees because it has not listed the numeric values of the interest credit

---

[1] Plaintiffs refer to index margins as "spread fees," although that term does not appear in the Plaintiffs' annuity contracts.

MOTION TO DISMISS
*Taylor, et al. v. Midland National Life Insurance Company*, No. 23-cv-04125-PCP

factors on the 403bcompare.com website, allegedly in violation of cited provisions of the Education Code applicable to fixed indexed annuities offered to public school teachers for use in retirement plans.

Plaintiffs are attempting to manufacture a statutory violation by promoting a concept of "fee" that appears nowhere in the Education Code, the regulations governing fee disclosures for mutual funds and other 403(b) plans, or any accepted dictionary definition.  The fact that the interest credits on annuity accounts may be less than the returns on a hypothetical direct investment in securities does not mean that they are "fees."  As Plaintiffs concede, Midland does not invest in the securities that comprise the indexes used to calculate interest credits on index accounts.  (*See* Complaint, ¶ 55.)  Therefore, they cannot allege that Midland withholds the return on such securities as a "fee."  Instead, it simply credits interest in accordance with the crediting methods selected by contract owners, as provided in the contracts.

Investors in mutual funds *are* subject to fees and expenses that reduce the value of their accounts.  Mutual fund fees and expenses decrease the value of the owners' investments, either directly through shareholder fees or indirectly through the payment of operating expenses from fund assets, regardless of the performance of the fund.  In contrast, the interest credit factors used to determine interest credited to the fixed indexed annuities only impact how much the index account values <u>increase</u> from year to year.  Indeed, every example in the Complaint involves an increase to the account value through the receipt of an interest credit.  (*See* Complaint, ¶¶ 88, 90.)  There cannot be decreases because Midland guarantees that the interest credits cannot be less than zero.

Plan participants who want to maximize their potential returns are free to invest in mutual funds with higher risks, including the risk of losing the principal they contributed to their retirement plan.  Those seeking stability and preservation of their principal may select products with lower risk, including fixed indexed annuities.  The fact that the interest credited to owners of fixed indexed annuities may be less than the returns achieved by more aggressive direct investments in securities does not mean there is a "fee."  Unlike mutual fund owners who have been exposed to market losses and deductions from their accounts, fixed annuity owners have

not *lost* any property; rather they have *received* interest as provided by their contracts.  Clients who are willing to limit their upside potential in exchange for increased stability are not being charged a "fee"; they are simply buying an insurance contract that provides specified benefits, including protection from market losses, in exchange for premiums.  The Complaint does not deny that purchasers have, in fact, benefited from their purchases.  It does not recognize, however, that interest credit factors are simply part of the definition of what credits will be provided, not fees payable to Midland or anyone else.

Moreover, the Complaint misstates the law by mischaracterizing the interest credit factors contained in the contracts as "fees."  The language of the statute does not hint at any legislative intent to adopt a uniquely broad definition of "fee" that would extend to Plaintiffs' tortured reading of the term.  The California Supreme Court, relying on dictionary definitions, has held that the term "fee" denotes a payment as compensation for a service performed.  In describing the disclosure obligations relating to 403(b) plans, the Legislature listed ordinary examples of fees and referenced regulatory requirements that incorporate the common understanding of "fee"—an amount deducted from a person's account or paid from the person's assets in connection with some transaction or service.  Regulations of other agencies are consistent with the view that those interest credit factors are not "fees."  The interest credit factors are merely used to calculate how much annuity account values are increased.  That calculation does not result in a payment to anyone for any service or anything else.  Therefore, Midland moves for the dismissal of the Plaintiffs' claims to the extent they allege that the application of interest credit factors resulted in the unlawful collection of a fee in violation of Section 25107 of the Education Code because, as a matter of law, the interest credit factors are not "fees."

Midland also moves for the dismissal of Plaintiffs' claims to the extent they rely on a claimed ongoing obligation to post "updated" information on interest credit factors on the 403bcompare.com website.  In addition, Midland moves to dismiss the complaint in its entirety because no Plaintiff has alleged facts that establish that he or she meets the standing or inadequate legal remedy requirements of the Unfair Competition Law.  Midland further moves to

strike the proposed class definition in Plaintiffs' Complaint as an impermissible "fail-safe" class. For all these reasons, the Complaint should be dismissed in whole or in part.

## III.   FACTUAL BACKGROUND

Plaintiffs are current or former public school teachers and employees who purchased Midland fixed indexed annuities as part of a 403(b) plan, a form of tax-deferred retirement plan in which teachers may hold either annuities or investments in mutual funds.[2] (*See* Complaint, ¶¶ 17-28.)  Companies that offer annuities or mutual funds to public school teachers for 403(b) plans in California are required to register such products with the California State Teachers Retirement System (CalSTRS).  Cal. Education Code §25101.  Sections 25100 to 25115 of the Education Code govern the registration and disclosure of products for use in 403(b) plans.  Pursuant to the Code, CalSTRS has implemented the 403bcompare.com website, which provides general information about saving for retirement as well as product information regarding registered annuities and mutual funds.  (*See* Complaint, ¶ 62.)  The Education Code requires disclosure of "expenses," including "management fees and annual fees," for registered products.  Cal. Education Code § 25101(a)(3) (listing examples of expenses).  Section 25107 provides that a vendor may not "charge" a "fee" that has not been disclosed on the website as required by Section 25101 of the code.

Section 403(b) of the Internal Revenue Code permits employees of non-profit organizations and public school employees to save for retirement through pre-tax contributions to annuity contracts or "custodial accounts" (*i.e.*, mutual funds).  26 U.S.C. § 403(b)(1), (7).  Annuities and mutual funds work differently and have features that may appeal to different

---

[2] All facts are taken from the allegations of the Complaint (for the purpose of this motion only), documents referenced in or attached to the Complaint, and documents of which the Court may take judicial notice.  *See* Request for Judicial Notice ("RJN").  Although Midland has included the contracts for each plaintiff in its request for judicial notice, references in this brief are to the policy issued to named plaintiff Taylor.  There are variations among the contracts and forms, some of which are merely matters of whether certain provisions are in the main body of the policy or in an endorsement, while others relate to the indexes and index crediting methodologies.  The performance of different policies depends greatly on when they were issued and choices made by their owners.  However, for purposes of this motion, except as otherwise noted, the cited provisions of the policies are sufficient examples of the terms of the other policies held by the named plaintiffs.

MOTION TO DISMISS
*Taylor, et al. v. Midland National Life Insurance Company*, No. 23-cv-04125-PCP

participants, depending on, among other things, their risk tolerance, their age, and their planned date of retirement.  Plan participants have a broad choice of funds and annuities to meet their needs, with varying levels of risk.  While some participants may be willing to place all or some of their retirement savings in funds with higher potential returns and risk of market loss, others may be more interested in stability and limiting their exposure to market risk.

This case involves fixed indexed annuities issued by Midland to participants in 403(b) retirement plans in California.  (Complaint, ¶ 1.)  Fixed indexed annuities are insurance products and are subject to regulation by the California Department of Insurance.  *See* Cal. Ins. Code §101.  They are not subject to registration with the Securities and Exchange Commission under the Securities Act of 1933 and they do not implicate the Investment Company Act of 1940, which pertains to securities issued by investment companies, including mutual funds. 15 U.S.C. § 77c (a)(8); Complaint, ¶ 76 ("An indexed annuity is therefore not defined as a security, but instead as an insurance product …").  In contrast, mutual funds are regulated as securities under the Investment Company Act of 1940.  *See Northstar Fin. Advisors v. Schwab Invs.*, 615 F.3d 1106, 1109 (9th Cir. 2010).  The difference in the regulatory schemes derives from a key difference in the products, which is that the guarantees provided by fixed indexed annuities like Midland's protect purchasers from losing their principal.  (*See, e.g.*, Request for Judicial Notice ("RJN") at Ex. A, p. A-040).

### A.    Fixed Indexed Annuities Use Interest Credit Factors to Calculate the Amount of Interest Added to Annuity Account Values.

Premiums received from owners of annuities are added to one or more of the accounts maintained pursuant to the annuity contracts, which include the fixed account and various index accounts. (*E.g.*, RJN at Ex. A, p. A-020, A-039.)  Balances in the fixed account are credited with interest at a fixed rate specified in advance of each policy anniversary.  (*E.g.*, *id.* at A-020-21.) The fixed rate is only "fixed" for one year at a time, but it can never be less than a guaranteed minimum fixed rate specified at the inception of the contract.  (*E.g.*, *id.* at A-005, A-021.)  At times specified in the contracts, owners may also allocate or reallocate some or all account values to one or more "index accounts."  (*E.g.*, *id.* at A-040.)  The index accounts provide different methods for determining credits that involve the performance of a selected index and

the application of one or more interest credit factors:  caps, participation rates, or index margins. (*E.g.*, *id.* at A-008.)

Plaintiffs identify three interest credit factors that are used to calculate the total interest credit to an index account when the performance of the associated index is positive:[3]

**Caps:** "an upper limit on how much of the Crediting Strategy's returns can be credited to an investor's account."  (Complaint, ¶ 88.)

**Participation Rates:**  the "percentage of an index's returns that are credited to an annuity."  (Complaint, ¶ 89.)

**Spread Fees:**[4] a "percentage amount that is subtracted from any gain generated by the Crediting Strategy."  (Complaint, ¶ 90.)

The interest credited under each type of interest credit factor differs depending on the performance of the index, as calculated under the particular contract and methodology selected by the owner.  A hypothetical comparison of accounts linked to the S&P 500, each using a different interest credit factor, illustrates the broad variation in results.  Suppose that an annuity owner had a choice of one account with a cap of 6%, one with a participation rate of 75%, and one with an index margin of 3%.  If the accounts use an annual "point-to-point" methodology, in which credits are calculated using the difference in the index value at the beginning and the end of the policy year, the resulting credit under each account would depend on the magnitude of the change in the index value over the policy year, and no single account would always provide the most credit:

---

[3] Although Plaintiffs' description of the interest credit factors is not fully consistent with the terms of the annuity contracts, those allegations sufficiently describe those factors for purposes of this motion to dismiss, except that they fail to mention in paragraphs 88-90 that the credits to the index accounts can never be less than zero.  However, they acknowledge that the "investor cannot lose money." (Complaint, ¶ 76.)

[4] Although Plaintiffs refer to index margins as "spread fees," that term does not appear in the contracts.  The contracts provide for an "index margin" with respect to some index accounts, which are deducted from the as calculated percentage gain in the index, provided that, the interest credit will never be less than zero.  (*See, e.g.*, RJN at Ex. A, p. A-043.)

**Scenario A:  Index increases by 3%:**

Cap:  Because 3% is less than 6%, the interest credit would be 3%

Participation rate:  3% x 75%= 2.25%

Index margin:  3% - 3% = 0%

**Scenario B:  Index increases by 10%.**

Cap:  Because 10% is greater than 6%, the interest credit would be 6%

Participation rate:  10% x 75% = 7.5%

Index margin:  10% - 3% = 7%

**Scenario C:  Index increases by 14%**

 Cap:  Because 14% is greater than 6%, the interest credit would be 6%

Participation rate:  14% x 75% = 10.5%

Index margin:  14% - 3% = 11%

The best choice in Scenario A would have been the cap; in Scenario B, the participation rate; in Scenario C, the index margin.  These hypotheticals demonstrate that the different interest credit factors interact with different index returns to produce varying interest credits.  But in none of these cases is the interest credit factor applied as a "fee" charged for services rendered.

The applicable interest credit factors for each index account are specified in advance of each contract anniversary and can differ from year to year, but may never be lower than a minimum percentage (in the case of caps and participation rates) or greater than a maximum percentage (in the case of index margins) guaranteed at the time the contract was issued.  (*E.g.*, RJN at Ex. A, p. A-008, A-039, A-043.)  In no case for any index account can the interest credit ever be less than zero, regardless of which interest credit factor is used.  (*E.g.*, *id.* at A-040, A-044 ("The Interest Credit will not be less than zero.").)  Thus, the interest credit factors only affect the account value when the associated index has a positive performance during the relevant crediting period.  The point is that Midland uses caps, participation rates, and margins to calculate index credits that *increase* the annuity's account value (or in the worst case scenario, leave the same); they are not "fees" that are *deducted* from the account value.

As Plaintiffs concede, while interest credits on a fixed indexed annuity may be "tied to the performance of a specific market index," Midland "does not invest the investor's money in that underlying market index."  (Complaint, ¶ 55.)  Thus, when Midland credits interest through a formula that produces a lower credit because of the inclusion of a cap, participation rate, or margin, it does not obtain or keep the difference between (i) the total percentage increase in the underlying index, such as the S&P 500, and (ii) the percentage credit the owner receives under the terms of the contract.[5]  Midland merely credits interest pursuant to contractual provisions that include the index performance as one variable.  The interest credits therefore do not result in the retention or "charge" of a "fee" by Midland.

**B.    Investments in Mutual Funds Are Subject to Market Losses as Well as Fees and Expenses that Are Deducted from Their Accounts and Reduce the Value of the Investment.**

In contrast to fixed indexed annuities, a mutual fund is an "open-end investment company" that pools investor funds and invests directly in various securities, including stocks. Securities and Exchange Commission, *Mutual Funds and ETFs: A Guide for Investors* (2014), p. 4-5 (RJN, Ex. I).  Investors in mutual funds share in the performance of the fund's investments, including any declines in share value.  *See id.* at 4.  Share value is directly related to the changes in the market values of the securities owned by the fund.  *See id.* at 11.  A mutual fund therefore exposes investors to market risk—in the event that the value of the securities held by the fund declines, investors may lose their principal or see prior gains disappear.  *Id.*

Investors in mutual funds must also bear the costs of operating the fund, through the payment of shareholder fees and the fund's payment of operating expenses.  *Id.* at 24. Shareholder fees are paid directly from shareholder accounts, withdrawals or contributions, either in connection with a transaction, such as loads paid on new investments, or periodically as account fees.  *Id.*  Operating expenses, such as the costs of administration and investment management, are paid from fund assets, so that the investors bear those costs as well because

---

[5] Midland does hedge its risks using derivatives contracts, but it is not obligated to do so by the contract and those hedges do not result in it retaining amounts corresponding to the amounts Plaintiffs claim to be "fees."  Plaintiffs have ***not*** alleged that Midland receives and retains such amounts.

.

MOTION TO DISMISS
*Taylor, et al. v. Midland National Life Insurance Company*, No. 23-cv-04125-PCP

they directly reduce the net asset value of the shares in the fund.  *Id.*  Payments of shareholder

fees and the fund's expenses reduce the value of the investment regardless of market

performance.  *Id.*  Even if the price of the securities held by a mutual fund were unchanged from

the time an investor purchases shares in the fund, investors could still receive less than their

original investment due to the deduction of shareholder fees from their accounts and the

reduction in overall fund assets to pay for operating expenses.

The SEC requires disclosure of shareholder fees and operating expenses in a standardized

table format in the prospectus.  *Id.* at 26.  Shareholder fees include sales charges, or loads,

deducted at the time of purchase, transactional fees such as redemption and exchange fees, and

annual account fees.  *Id.* at 26-28.  Disclosable operating expenses, paid out of mutual fund

assets, include management fees for advisors, distribution fees, and annual operating expenses.

*Id.* at 31-32.  The SEC disclosure form for mutual fund includes a table that categorizes and lists

the fees and operating expenses that must be disclosed in the fund prospectus.  (RJN at Ex. H, p.

11.)  As discussed above, none of these items are associated with fixed indexed annuities.

## IV.    ARGUMENT

### A.    Legal Standards

Under Fed. R. Civ. P. 12 (b)(6), a motion to dismiss must be granted if the allegations in

the Complaint fail to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007).  While the Court must accept the plaintiff's well-pleaded

allegations as true, it need not accept conclusory claims, unwarranted deductions of fact, or

unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Rather, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and

reasonable inferences from that content, must be plausibly suggestive of a claim entitling the

plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  Here,

Plaintiffs' claims regarding interest credit factors rely entirely on the conclusory statement that

they are "fees," and therefore subject to disclosure under Section 25101 of the Education Code.

Plaintiffs' failure to plead facts necessary to establish standing to seek relief under the UCL or

equitable relief from the Court similarly defeats their claims as a matter of law.  The Court may therefore dismiss Plaintiffs' claims for failure to state a claim upon which relief may be granted.

Under Fed. R. Civ. P. 12(f), a party may file a motion to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  The function of Rule 12(f) motions is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted).  "District courts have authority to strike class allegations at the pleading stage where the class as defined in the complaint cannot be certified."  *Goodrich v. Cross River Bank*, 2022 WL 2954933, at *1 (N.D. Cal. Jul. 26, 2022) (citing *Kamm v. California City Development Co.*, 509 F.2d 205, 207 n.3, 212-13 (9th Cir. 1975)).

### B.    The Interest Credit Factors Used to Calculate Interest Credits Are Not "Fees."

#### 1.    The Plain Language of the Statute Does Not Support Plaintiffs' Novel Definition of "Fee."

Although Section 25100 *et seq.* of the Education Code does not define the term "fee," there are no grounds on which to reasonably conclude that the Legislature intended to adopt Plaintiffs' novel assertion that the interest credit factors are "indirect fees."  When interpreting a statute, the Court begins with "the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent."  *Heckart v. A-1 Self Storage, Inc.*, 4 Cal. 5th 749, 757 (2018) (quoting *Fluor Corp. v. Superior Ct.*, 61 Cal. 4th 1175, 1198 (2015)).  If there is no ambiguity in the statutory language "the plain meaning controls."  *Id.*; *see People v. Clark*, 45 Cal. App. 4th 1147, 1155 (Cal. App. 1996) (common definition of term controlled where Legislature did not provide specialized definition of term.).  "When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word."  *Wasatch Property Management v. Degrate* 35 Cal. 4th 1111, 1121-22 (2005).  The California Supreme Court, after reviewing several dictionaries, concluded that the term "fee" denotes payment as compensation for a service performed.  *Trope v. Katz*, 11 Cal. 4th 274, 280 (1995) (quoting Webster's New

International Dictionary 833 (3d Ed. 1961), "compensation often in the form of a fixed charge

for professional service or for special and requested exercise of talent or of skill," and 5 Oxford

English Dictionary 797 (2d Ed. 1989), "'a payment,' such as the 'remuneration paid or due to a

lawyer, a physician or (in recent use) any professional man, a director of a public company, etc.

for an occasional service.'"); (*see also* RJN at Ex. J, Black's Law Dictionary (11th Ed. 2019) ("a

charge or payment for labor or services, esp. professional services.")).

Interpreting the term "fee" according to its ordinary definition, as opposed to accepting

Plaintiffs' view that any difference between the return on a basket of risky securities and the

interest credited under an insurance contract is a "fee," is also supported by the context of other

language in the statute.  Education Code Section 25101(a)(3) requires disclosure of "expenses"

paid directly or indirectly, including but not limited to "penalties for early withdrawals, declining

or fixed withdrawal charges, surrender or deposit charges, management fees and annual fees,

supported by documentation as required for prospectus disclosure by [FINRA] and the [SEC]."

The listed expenses do not extend beyond ordinary charges, including fees for management of a

fund or annual fees to cover administration.  Such fees are common in the mutual funds that are

available to participants in 403(b) plans.  (*See* RJN at Ex. I, p. 24-25.)

Plaintiffs' novel and expansive reading of the term "fee" is firmly in conflict with well-

settled canons of statutory construction.  Under the canon of *ejusdem generis*, when the

Legislature provides a nonexclusive list, "including but not limited to" several specific examples,

either before or after a general term, the general term is "restricted to those things that are similar

to those which are enumerated specifically." *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d

1142, 1160, n. 7 (1991).  "The canon presumes that if the Legislature intends a general word to

be used in its unrestricted sense, it does not also offer as examples peculiar things or classes of

things since those descriptions then would be surplusage." *Kraus v. Trinity Management Servs.,*

*Inc.*, 23 Cal. 4th 115, 141 (2000).  Plaintiffs' unrestricted and expansive reading of "fee" is

inconsistent with the examples set out in the statute ("management fees" and "annual fees"),

which reflect the Legislature's intent to restrict the term to its ordinary usage.  Had the

Legislature intended to include factors used to calculate interest according to the contractual

formula for annuity interest credits within the scope of Education Code section 25107, it would have done so expressly, rather than by relying on a novel interpretation of the term "fee" that conflicts with that term's use in other sections of the statute.

Expanding "fee" to include interest credit factors also conflicts with Section 25107 of the Education Code's prohibition against "*charging*" fees: "a vendor may not *charge* a fee associated with a registered 403(b) product that is not disclosed." (emphasis added). The verb "charge" contemplates an actual payment or explicit deduction from an account. *See Rhodes Jamieson, Ltd. v. Cal. St. Bd. Of Equalization*, 201 Cal. App. 2d 343, 345 (1962) ("charge" is "the price demanded for a thing or service; a debit to an account" or "the price required or demanded for service rendered, or … for goods supplied." Quoting Webster's Third International Dictionary and 14 Corpus Juris Secundum 402 (ellipsis in original)). Application of a cap, participation rate, or index margin does not result in a "charge" that is paid by the owner or collected by the insurer.[6] Unlike fees and expenses on mutual funds, interest credit factors do not result in a payment by the owner or a deduction from the existing account value.

### 2. Similar Regulatory Fee Disclosure Requirements Do Not Adopt Plaintiffs' Broad Concept of Fees.

Other regulatory disclosure regimes also support an ordinary definition of "fee" that does not extend to interest credit factors. Although the SEC's prospectus disclosure requirements do not apply to Midland's annuity products because they are not securities, the reference to the SEC's requirements in Education Code Section 25101 also supports disclosures consistent with the ordinary meaning of the term "fee." The SEC's mutual fund prospectus disclosure form includes a standardized format for disclosures of fees and expenses. (*See* RJN at Ex. H, p. 11.) The SEC-required disclosure for mutual funds distinguishes between "shareholder fees" and "annual operating expenses." (*Id.*) Shareholder fees are amounts paid directly by the shareholder through deductions from contributions and withdrawals, including sales loads, exchange fees, redemption fees, and account fees. (*Id.*) Annual operating expenses are regular and recurring fund-wide expenses to service providers that are paid out of the fund assets. (*Id.*)

---

[6] Indeed, the variability in the impact on the interest calculations that caps, participation rates, and index margins have is inconsistent with a characterization of any interest credit factor as a fee for services. See the examples at page 8 above.

In each case, the fee or expense reflects a deduction from an asset, whether paid directly by the shareholder or indirectly from fund assets.  No such deduction occurs when a cap, participation rate, or margin is applied to a fixed indexed annuity.

The Department of Labor's disclosure requirements for participant-directed retirement plans, which govern 403(b) plans held by non-public employees, include disclosure requirements for "fees" and "expenses" that are specific to annuities.  29 C.F.R. § 2550.404a-5.  The regulations incorporate the same concept of fees as the SEC's disclosure requirements, but also recognize the key distinctions between mutual funds and annuities.  The required disclosures for mutual funds under ERISA mirror the SEC's requirements, including maintaining the distinction between shareholder fees and annual operating expenses.  *See* 29 CFR §2550.404a-5(d)(1)(iv)(A).  As to annuities, the Department of Labor requires disclosure of "fees that will reduce the value of amounts allocated by participants or beneficiaries to the option, such as surrender charges, market value adjustments, and administrative fees."  29 CFR §2550.404a-5(i)(2)(vii)(F).  Although fixed indexed annuities are available options for the 403(b) plans covered by the Department of Labor disclosure regulation, the regulation never mentions caps, participation rates, or margins.

A key point is that interest credit factors do not reduce the value of the amounts allocated by owners to an index account.  Instead, they only affect how much the account value may be *increased* by interest credits beyond the amounts allocated.  Fixed index annuities do not have fees deducted from the account value of the contracts.  The returns calculated as provided in the contracts are simply credited to the accounts.  Indeed, for index accounts subject to caps, participation rates, and margins, when the underlying indexes decline, the calculated return is zero.  This is in contrast to a mutual fund, where annual operating expenses and management fees are deducted *regardless* of the performance of the fund.  Therefore, the index account interest credit factors are not like the fees associated with mutual funds; they are not fees at all.

MOTION TO DISMISS
*Taylor, et al. v. Midland National Life Insurance Company*, No. 23-cv-04125-PCP

**C.    The Education Code Does Not Require Updating the Interest Credit Factors Set by Midland.**

Plaintiffs contend vendors must "update the details about their direct and indirect fees on 403bcompare.com." (Complaint, ¶ 66.)  Plaintiffs' claim that Midland has an ongoing duty to update the caps, participation rates, and index margins has no support in the provisions of the Education Code.  There is nothing in the statute that requires companies to update factors that may vary over time when that variation is allowed by the terms of the contract.

California Education Code section 25102 governs renewals and the addition of product information after initial registration:

> Registration shall be offered to vendors once annually, and renewal of registration shall be required at least once every five years thereafter for vendors that wish to continue to participate. The board shall provide public notice prior to the initial registration, annual registration, and registration renewal periods. The board may require, through a password–based update system that allows vendors to access the registration list for the purposes of updating their product information, or through other means, an update of the information required to be provided under Section 25101 with each registration renewal. Registered vendors shall submit to the board within the time required by the Securities and Exchange Commission an amendment to the information required to be provided under Section 25101 to reflect material changes to the products or services offered that occur between registration or renewal periods. Registered vendors may register additional 403(b) products with the board between registration or renewal periods by providing the board the information required under Section 25101 and fees required under subdivision (c) of Section 25108. …

The first sentence of Section 25102 provides that vendor registration will be offered once annually and renewal of that registration shall be required at least once every five years.  It does not require updating product information between registration dates.

The third sentence provides that "The Board *may* require … an update of the information required to be provided under Section 25101 with each registration renewal," but it does not impose any updating requirement if the Board decides not to impose one.  *Id.* (emphasis added). In fact, the Board has not adopted any regulation to provide an updating requirement.  *See generally* 5 Cal. Code. Regs. §§ 20500-27801 (comprising all regulations adopted by CalSTRS).

The fourth sentence contains a mandate, but it does not apply to registrations of fixed indexed annuities.  It states that "Registered vendors shall submit to the Board within the time required by the Securities and Exchange Commission an amendment to the information required

15

to be provided under Section 25101 to reflect material changes to the products or services offered that occur between registration or renewal periods."  But the SEC does not require updates to disclosures for fixed indexed annuities because they are *not* regulated securities.  *See* 15 U.S.C. § 77c (a)(8).

The fifth sentence merely provides for registration of additional products following initial registration and before renewal, but does not require or mention posting additional information regarding products that have already been registered.

The Plaintiffs' annuity contracts expressly state that interest credit factors for new crediting periods will be set at the beginning of each such period, subject to guaranteed minimum cap and participation rates and guaranteed maximum index margins, maximums) which cannot change during the lifetime of the contract.  (*E.g.*, RJN at Ex. A, p. A-008, A-039, A-040.) Because those guarantees remain in force until the contract is surrendered, matures, or is annuitized (*id.* at A-023), there is no change over time that requires any updating or posting of the interest credit factors on the website, which is properly focused in accordance with the statute on products being offered for issuance to new purchasers.  Plaintiffs' allegations as to a requirement to update the website every time a cap, participation rate, or index margin is updated are not plausible in the face of the language of the statute.

### D.  Plaintiffs Have Not Adequately Pleaded Standing to Assert Claims Under the UCL.

Plaintiffs' claims under the UCL fail because they have not alleged facts sufficient to meet the standing requirements of the statute.  To maintain a private action under the UCL, Plaintiffs must show that they have "suffered injury in fact" and have "lost money or property as *a result of* the unfair competition."  Cal. Bus. & Prof. Code § 17204 (emphasis added).  The phrase "as a result of" implies a requirement of a causal connection between the conduct and the injury.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011).  Where Plaintiffs premise their claims on allegedly unlawful conduct, they must show that the alleged violation resulted in an injury.  "If a plaintiff 'would suffer the same harm whether or not a defendant complied with the law' that forms the basis of a UCL claim, the 'causal connection is

broken.'" *Fuentes v. Dish Network*, 2019 WL 13081492, at *6 (N.D. Cal. Aug. 4, 2019) (quoting *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007)).  While Plaintiffs have alleged a series of failures to comply with the relevant provisions of the Education Code, they have not alleged that they would have behaved any differently if those alleged violations had not occurred.

Although Plaintiffs broadly assert that Midland's conduct has misled teachers into purchasing Midland annuities, they do not specifically allege any loss of money or property that occurred "as a result of" Midland's alleged failure to disclose fees on the 403bcompare.com website.  Plaintiffs assert that Midland, by "hiding its fees … has lured unsuspecting teachers into its poorly performing products and away from better products sold by vendors that disclose their fees." (Complaint, ¶ 14.)  Plaintiffs include themselves among "such teachers," (*id.* at ¶ 15), but they do not allege that they were personally "lured" into purchasing their annuities by the alleged failure to disclose interest credit factors on the website.  Although Plaintiffs identify the products they purchased and the dates of purchase, they do not claim that they were unaware of how their interest credits would be determined or any other alleged "fees."  (*See* Complaint, ¶¶ 111-114, 121-122.)  Indeed, none of the named plaintiffs alleges that they visited the 403bcompare.com website before they purchased their annuities or any time thereafter.  Therefore, Plaintiffs' claims fail because they have not alleged that Midland's nondisclosures led them to suffer economic injury.

Plaintiffs cannot avoid the standing requirement by simply declaring the fees to be "unlawful."  Where, as here, Plaintiffs assert that the "predicate unlawfulness is misrepresentation and deception," the causation requirement applies.  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010); *see also Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 919 (2016) (in UCL action under unlawful prong, "when a consumer's theory is that the defendant 'engaged in misrepresentations and deceived consumers' the consumer needs to show reliance") (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310. 326, n. 9 (2011)).  The same rule applies to alleged failures to provide required disclosures.  *See Mayron v. Google, LLC*, 54 Cal. App. 5th 566, 575 (2020) (plaintiff lacked standing to assert claim for

MOTION TO DISMISS
*Taylor, et al. v. Midland National Life Insurance Company*, No. 23-cv-04125-PCP

failure to disclose terms of subscription and means of cancellation without allegation that failure "caused plaintiff to spend money he otherwise would not have spent."); *Debono v. Cerebral, Inc.*, 2023 WL 300141, at *2 (N.D. Cal. Jan. 18, 2023).  Plaintiffs therefore cannot establish standing by merely alleging that they were charged "fees" that were "illegal" or "unlawful" solely because of a claimed statutory disclosure requirement.  Because plaintiffs have not alleged that they would have acted any differently if Midland had made additional disclosures on 403bcompare.com, they have failed to allege causation and standing to maintain an action under the UCL.

Plaintiffs' attempt to use the "unfair" prong as a fallback does not alter the result.  In cases alleging unfair practices, plaintiffs are still required to establish causation: "[t]he UCL provisions are not so elastic as to stretch the imposition of liability to conduct that is not connected to the harm by causative evidence."  *In re Firearms Cases*, 126 Cal. App. 4th 959, 981 (2005).  Therefore, Plaintiffs' claims should be dismissed for lack of standing.

### E.    Plaintiffs Have Failed to Plead They Lack an Adequate Remedy at Law.

Plaintiffs' UCL claims, which seek equitable remedies of both restitution and injunctive relief, should also be dismissed because Plaintiffs have failed to plead that they lack an adequate remedy at law, a key prerequisite for obtaining equitable relief in federal courts.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("we hold that the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL").  Courts in this district have held that the holding of *Sonner* applies at the pleading stage, and that a failure to plead a lack of an adequate remedy of law is grounds for dismissal of claims seeking equitable relief, including claims under the UCL.  *See Stafford v. Rite Aid Corp.*, 2023 WL 2876109, at *4 (N.D. Cal. April 10, 2023) ("Plaintiffs' prayer for equitable relief must plausibly allege 'the inadequacy of a legal remedy'"); *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021) ("[t]he issue is . . . whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy. On that point, *Sonner* holds that it does not."); *see also In re Macbook Keyboard Litig.*, 2020 WL 6047253, at *2-3 (N.D. Cal. Oct. 13, 2020).

Because Plaintiffs have not alleged the lack of an adequate remedy at law, their UCL claims should be dismissed.

**F.      The Court Should Strike Plaintiffs' Improper Fail-Safe Class Definition.**

Plaintiffs allege that Midland has violated Section 25107 of the Education Code by charging fees that were not properly disclosed on 403bcompare.com.  (Complaint, ¶¶ 144, 145.) Their class definition limits membership to those employees "who paid fees that were not properly disclosed on 403compare.com":

> All public employees of all California local school districts, community college districts, county offices of education, and state employees of a state employer under the uniform state payroll system, excluding the California State University System, eligible to participate in an annuity contract and custodial account . . . who were invested in an indexed annuity 403(b) product issued by Defendant ***and who paid fees that were not properly disclosed on 403bcompare.com***.

(Complaint, ¶ 128 (emphasis added).)

The definition assumes that Plaintiffs will prevail on their claim that they paid "fees that were not properly disclosed."  The proposed class is a "fail-safe" class because the "determination of whether a person is a member of the class is dependent on whether he/she prevails on the merits of the . . . claim alleged in the operative pleading."  *Dixon v. Monterey Fin. Servs.*, 2016 WL 4426908, at \*2 (N.D. Cal. Aug. 22, 2016).  In other words, class membership is limited to only those putative class members who prevail on their claims.

A class allegation becomes "fail-safe" when it "is defined in a way that precludes membership unless the liability of the defendant is established."  *Kamar v. Radio Shack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010).  "Such classes are prohibited 'because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.'"  *Johnson v. City of Grants Pass*, 72 F.4th 868, 887 n.23 (9th Cir. 2023) (quoting *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (en banc)).

A class definition that is limited to those individuals who prevail on their claim deprives the defendant of a key benefit of a class action if it prevails – a final judgment binding all class members.  Here, if the class defined in the Complaint were certified and the factfinder

MOTION TO DISMISS
*Taylor, et al. v. Midland National Life Insurance Company*, No. 23-cv-04125-PCP

determined (as it should) that the interest credit factors at issue here are not "fees that were not properly disclosed," this finding would have no preclusive effect because the alleged class would vanish upon that merits determination.  Courts in this district routinely strike similar "fail-safe" classes for this very reason.  *See, e.g.*, *Greenfield v. Cross River Bank*, 2023 WL 187495, at *4 (N.D. Cal. Jan. 13, 2023) (striking "fail-safe" class definition because use of the phrase "completed a loan application" in the allegation "defines the class in a manner that limits membership to those who will prevail"); *Salaiz v. eHealthInsurance Servs.*, 2023 WL 2622138, at *4-6 (N.D. Cal. Mar. 22, 2023) (striking "fail-safe" class in Telephone Consumer Protection Act case that conditioned class membership on a finding that defendant lacked the putative class member's "express written consent"); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1166-67 (N.D. Cal. 2008) (striking class definitions that included California purchasers of "Dell computer products that 'Dell falsely advertised'" because "[t]o determine who should be a member of these classes, it would be necessary for the court to reach a legal determination that Dell had falsely advertised").  Accordingly, Plaintiffs' class definition should be stricken.

## V.   <u>CONCLUSION</u>

For the above reasons, the Court should grant Midland's motion to dismiss and motion to strike.  Midland moves to dismiss the Complaint in its entirety because no Plaintiff has alleged facts that establish that he or she meets the standing requirements of Section 17204 of the Business and Professions Code and because Plaintiffs have not alleged they lack an adequate remedy at law.  Alternatively, because Plaintiffs' claims turn on a construction of "fee" that is not supported by the relevant sections of the Education Code, the Court should dismiss Plaintiffs' claims relating to interest credit factors with prejudice.  In the alternative, Midland moves to dismiss Plaintiffs' claims to the extent they rely on an alleged duty to update product information, including interest credit factors, on the 403bcompare.com website.  To the extent the Plaintiffs' claims are not dismissed in their entirety, the Court should strike the class definition in the Complaint.

Dated: September 29, 2023

/s/ Thomas A. Evans
Thomas A. Evans
Alston & Bird LLP
*Attorneys for Defendant*
*Midland National Life Insurance Company*

MOTION TO DISMISS
*Taylor, et al. v. Midland National Life Insurance Company*, No. 23-cv-04125-PCP